UNITED STATES *v*. BIDDLE PURCHASING CO. ET AL.

**No. 7616.**—Invoices dated Lisbon, Portugal, April 14, 1939, etc.
Certified April 15, 1939, etc.
Entered at New York, N. Y., May 5, 1939, etc.
Entry No. 28961, etc.

(Decided September 17, 1948)

*David N. Edelstein,* Assistant Attorney General (*Samuel D. Spector,* special attorney), for the plaintiff.

*Barnes, Richardson & Colburn* (*Hadley S. King* of counsel); *Strauss & Hedges* (*Hadley S. King* of counsel); and *Sharretts & Hillis* (*Edward P. Sharretts* of counsel) for the defendants.

COLE, Judge: This case arises from an action by the collector of customs, appealing for reappraisement of three kinds of canned sardines (boneless, boneless and skinless, and plain), exported from Portugal and entered at the port of New York. The importers' entered values, which included an item of 10 per centum discount, were accepted by the appraiser as representative of dutiable export value, section 402 (d) of the Tariff Act of 1930 (19 U. S. C. 1402 (d)). The collector contends that no discount is applicable, and that the merchandise should be appraised at basic list prices.

The issue was originally presented before me in *United States* v. *A. Goldmark & Sons Corp.—A. Goldmark & Sons Corp.* v. *United States,* 12 Cust. Ct. 418, Reap. Dec. 5992, the record in which was incorporated herein by consent. That case involved five appeals for reappraisement. Four were filed by the collector and one by the importer. Because of the cross-appeals, it was understood that the evidence offered by each side would be considered as directly applicable to the questions presented. Twenty-five appeals, all filed by the collector, were consolidated herein by agreement. Thus, the Government, as the appealing party herein, has assumed the burden of not only showing that the appraiser's action is wrong, but also proving the correct statutory value. *Sears, Roebuck & Co.* v. *United States,* 31 C. C. P. A. (Customs) 36, C. A. D. 246.

The merchandise in question was exported in 1939, during the months of April, May, June, July, August, and September, the last shipment being under date of September 12, 1939. Conditions prevailing in the Portuguese sardine market at that time are outlined in the special agent's report (exhibit 1 in the *Goldmark* case, *supra*), revealing the following situation. In 1935, all manufacturers or packers were members of an organization called the "Portuguese Preserved Fish Consortium," controlled by a semiofficial Government organization known as the "Instituto Portuguese de Conservas de Peixe," commonly referred to as the "I. P. C. P." The consortium was established to stabilize prices, and to accomplish its purpose, a

price list was issued, setting forth minimum prices at which sardines were to be sold throughout the industry. The price list was closely adhered to until the "fall of 1938," when the practice of granting discounts from such prices was instituted. The discount allowed was a matter of negotiation between the purchaser and the seller, the rate finally granted usually being a compromise between the offer of the Portuguese packer and the proposal of the American importer. As the practice developed, allowances ranged from 5 per centum to 20 per centum until the outbreak of the war in the latter part of September 1939, when the market underwent a radical change and prices began to rise, reaching such proportions that the official minimum prices were ignored and the entire price list became utterly useless.

In the incorporated case, the importer submitted nine affidavits, executed by representatives of different packers of sardines in Portugal, and oral testimony of two witnesses, one, an officer of the importing corporation, and the other, an American agent for Portuguese packers. The proof is directed toward showing that sales of sardines, like those in question, made within the statutory requirements of dutiable export value, section 402 (d), *supra*, were always at varying rates of discount and never at the list prices shown on the official price list.

The Government's evidence in the previous case consisted of 12 special agents' reports, supplemented with oral testimony by the official who prepared the reports. They discuss transactions of various packers in Portugal, and each document deals with the business of a different firm. All of the reports include a schedule of sales made by the particular packer reviewed, showing, among other details, the rate of discount where one was allegedly allowed. The combined reports show 63 sales covering merchandise exported to the United States; 54 were at discounts ranging from 5 per centum to 20 per centum, and 9 were at the basic list prices.

My decision in the *Goldmark* case, *supra*, turned on the weight given to the nine transactions reported by the special agent as having been made at the list price, net. The importer offered nothing, *in the previous case*, suggesting that the sales were not consummated in accordance with the terms reported by the special agent. On the other hand, the special agent's report (exhibit 1 in the *Goldmark* case, *supra*), and oral testimony of the president of the importing corporation contained statements to the effect that all sardines are the same. On such a record, I accepted the 63 export sales as relating to merchandise substantially the same as that under consideration, and following the established tariff principle that the price at which *all purchasers* may buy is determinative of dutiable value, as invoked in

*United States* v. *American Glanzstoff Corp.*, 24 C. C. P. A. 35, T. D. 48308, and *United States* v. *Mexican Products Co.*, 28 C. C. P. A. 80, C. A. D. 129, the nine sales reported at the list prices became controlling for my conclusion, stated in the *Goldmark* case, *supra*, as follows: "These were the prices at which the merchandise was freely offered throughout the sardine industry. They were prices at which anyone, who wanted, could buy." Accordingly, I held the list prices to be the proper dutiable values of the merchandise.

When the case was on review, *A. Goldmark & Sons Corp.* v. *United States*, 15 Cust. Ct. 431, Reap. Dec. 6225, the division, speaking of the nine transactions hereinabove referred to, stated:

> The record contains no evidence tending to show the quality or brand of the sardines covered by the above nine quotations at list, net. Consequently there is nothing before us to indicate that the sardines covered by the nine quotations were such or similar to the sardines involved in this application for review. * * * In the absence of some evidence tending to show that the merchandise covered by the nine reported offers for sale, set out above, was such or similar to that here involved, such reported offers for sale can be given no weight in determining the value of the sardines covered by this application for review. * * *

The Government, as plaintiff herein, has proceeded to supply proof which the division said, as hereinabove quoted, was lacking in the incorporated case. It is deemed unnecessary, for reasons hereinafter set forth, to review in detail such additional testimony. Suffice it to say that there is in the new record some proof, supplementary of that in the incorporated record, tending to show that each class or type of sardines included in the importations under consideration is always the same, regardless of the label used or the packer employed in shipping them.

That phase of the case, however, becomes relatively unimportant in the light of importers' additional proof relating to the nine transactions reported by the special agent as having been made at net prices during the period in question. The newly produced evidence, not before me in the incorporated case, consists of testimony of American representatives of Portuguese packers of the sardines in question and consular invoices covering the identical transactions under discussion. This additional evidence is sufficient to destroy the value originally attached to the evidence of sales as presented in the reports of the special agent, and to confirm the action of the appraiser in accepting the entered values, allowing discounts.

The nine pertinent transactions are set forth in the following tabulation as they appear in the special agent's reports. The exhibit number of the particular report in which the sales are reported is also listed.

| Exhibit No. | Consular invoice No. | Date (1939) | Customer | Price | Discount |
|---|---|---|---|---|---|
| 4 | 400 | Apr. 3 | Meyer & Co., N. Y._____ | List_____ | net |
| 4 | 799 | July 24 | Kaufman's, Pittsburgh_____ | List_____ | net |
| 5 | _____ | Aug. 31 | Goldmark & Sons, N. Y._____ | List_____ | net |
| 7 | 458 | Apr. 15 | Strohmeyer & Arpe Co., New York _____ | List_____ | net |
| 7 | 821 | July 26 | R. Gerber, Chicago_____ | 16 shillings (18/9) | net |
| 7 | 870 | Aug. 9 | Calderon & Co., New York___ | $2.60 (79.25 escudos) | net |
| 7 | 974 | Aug. 30 | Calderon & Co., New York___ | $2.60 (79.25 escudos) | net |
| 9 | 535 | May 8 | Calderon & Co., N. Y._____ | List_____ | net |
| 10 | 466 | Apr. 17 | Ricossa, Detroit_____ | List_____ | net |

Representatives of Portuguese packers of sardines, who negotiated the transactions, testified concerning all of the above-enumerated sales, except the one covered by consular invoice 799 and made to Kaufman's, Pittsburgh. Testifying with consular invoices 870, 535, 458, 821, and 974 (exhibits 1, 2, 3, 4, and 5, respectively) before them, the witnesses stated that the prices shown thereon are not list prices, as reported by the special agent, but are in fact net prices, each one reflecting a discount, varying in rate from the basic prices set forth on the official price list (exhibit 13 in the *Goldmark* case, *supra*). The transactions covered by consular invoice 400 (exhibit 6) and the one under date of August 31 (no consular invoice mentioned) were parts of orders placed in 1938, about 1 year prior to the dates of exportation. While the contract or list price in 1938, before granting discounts became the practice in the ordinary course of trade, may have been the freely offered price at that time, it is the value at the time of exportation that is determinative of the present issue. Consular invoice 466 related to a shipment of only 30 cases, an unusually small order, not a wholesale quantity, and consequently without effect on the outcome of this case.

The proof, just outlined, very clearly disproves the accuracy of the special agent's reports as they show eight of the above-enumerated nine sales at list prices, net. The absence of further testimony, disputing the sale covered by consular invoice 799, in no way affects the controlling influence of importers' proof. In view of the convincing proof, successfully attacking the competency of the Government's reports as they relate to the transactions under discussion, it was a

matter for plaintiff to offer evidence, substantiating the report (exhibit 4 in the *Goldmark* case, *supra*), alleging consular invoice 799 to be a sale at the list price, net, the correctness of which, in the light of the present record, is questionable. No attempt was made to offer such corroborative proof.

The preponderance in weight of the evidence embodied in the combined records before me very definitely establishes that at the time of exportation of the sardines in question, such or similar merchandise was freely offered in the principal markets in the country of exportation to all purchasers in the usual wholesale quantities of 100 to 500 cases, in the ordinary course of trade for exportation to the United States, at list prices, less a discount, the rate being a matter of agreement between the buyer and the seller.

I therefore hold the appraised values, presumptively correct under the provisions of section 501 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U. S. C. § 1501), to be the dutiable values of the sardines in question. Judgment will be rendered accordingly.